HENRY C. PITNEY, JOHN R. EMERY, ALFRED REED,
FREDERIC W. STEVENS, MARTIN P. GREY AND
EUGENE STEVENSON, VICE-CHANCELLORS.

---

THE ATTORNEY-GENERAL et al.

| 61 | 259 |
| 64 | 558 |
| 64 | 559 |

*v.*

THE CENTRAL RAILROAD COMPANY OF NEW JERSEY et al.

[Filed February 19th, 1901.]

1. To an information by the attorney-general on the relation of a municipality may be joined a bill by the municipality asking relief appropriate to it.

2. An information by the attorney-general on the relation of a municipality charged that a grant by the riparian commissioners to one of the

defendants included land below former high-water mark, which was within the bounds of a public highway, and that the grantee was not the owner of the *ripa* in front of which said portion of the land lay, but had induced, by false representations as to its ownership or control of the *ripa*, the commissioners to make the grant. The relief sought was the abrogation of so much of the grant as was included in the highway.—*Held*, that the municipality which had attempted to assert the public right in the highway by an action of ejectment against the said grantee, and had been met by a defence founded upon the said grant, might join its bill with the attorney-general's information, and, upon such charges, ask relief tending to prevent the use of such grant in defence to the said action.

*Mr. Richard V. Lindabury,* for the demurrer.

*Mr. Frank Bergen, contra.*

THE CHANCELLOR.

The question presented by the pleading was argued before my predecessor, and remained undecided at his death. It has been re-argued before me, and the circumstances seem to call for a speedy decision.

The question presented is raised by a demurrer to an information, filed by the attorney-general in behalf of the state, on the relation of the city of Elizabeth, in which the city of Elizabeth is joined as a party complainant seeking relief. The defendants are the Central Railroad Company of New Jersey, the American Dock and Improvement Company, the Central New Jersey Land Improvement Company and the Elizabethport and New York Ferry Company. The information and bill make the following charges: That from time immemorial a common highway has existed across the state and across said city from a point on the Delaware river to a point on Staten Island sound, in the city of Elizabeth, and connecting with the navigable waters of the said sound, which said highway ought to be and remain a common highway across the said state and across said city, free and open, for the use, benefit and advantage of the said state and of the said city; that on November 6th, 1874, the Central Railroad Company of New Jersey made an application, in writing, to the governor of the state and to the commissioners under the Riparian acts for a grant, from the state, of

lands under tide-water lying in front of twelve tracts of land in Hudson, Essex, Union and Middlesex counties, which tracts were described in the said application; that the said company therein stated that they were the owners of some of the said tracts, and, by the written consent and contracts of the owners of the other tracts, were invested with the rights of riparian owners as to the said tracts; that the ninth tract was described in the application, and, as so described, included land abutting upon the former high-water mark in the northerly shore of Staten Island sound; that annexed to the part of the application containing the description of the ninth tract was a diagram purporting to display the said tract and the location of the said highway in relation thereto; that the Central Railroad Company of New Jersey never owned said ninth tract or any part of it; that on November 6th, 1874, the American Dock and Improvement Company, the Central New Jersey Land Improvement Company and the Elizabethport and New York Ferry Company executed a writing purporting to give consent to the riparian commissioners that a grant of land under water, in front of the shore belonging to them, might be made to the said railroad company; that none of the said corporations which executed said writing ever owned any land within the lines of the said common highway, or any estate or interest therein, although at that time said ferry company owned two tracts of land included in the description of the said ninth tract and fronting on Staten Island sound, one of which tracts lay southwest and the other northeast of the said common highway, and were binding thereon; that no other or further information was submitted to the governor and riparian commissioners as to the title or right of riparian ownership and as to the location and terminus of the said common highway than that contained in the application, being the description of the said ninth tract and the said map or diagram, and that on November 12th, 1874, the governor and riparian commissioners, relying on the said statements, made a grant to the railroad company of certain lands in front of the said ninth tract, in the description of which it is declared that part of the tract so granted was formerly under, but then was above, the tide-waters of the Arthur Kill or Staten

Island sound, and part thereof was still under the tide-waters of the said sound, and that the statements in the application and the representation on the said map, that the said railroad com-pany was the riparian owner of so much of the ninth tract as lay between the lines of the said common highway, were false and intended to deceive, and did deceive, said governor and riparian commissioners; that at the time of the said applica-tion and grant said common highway extended to the navigable waters of the said sound; that so much of the said grant as purports to convey to the said railroad company the lands, or any interest in the lands, between the lines of said common high-way and below original high-water mark therein was obtained by the false suggestions and untrue statements in the applica-tion; that since the making of the said grant the said railroad company has taken and held possession of that part of the said common highway lying below the original high-water mark, and by its use of the same has obstructed and prevented its use as a public highway; that on or about September 26th, 1888, the city of Elizabeth commenced an action of ejectment against the said railroad company, in the circuit court of the county of Union, to recover possession of the said part of said common highway; that in said action, by its plea and its response to a demand for a bill of particulars, the railroad company claimed title to part of the said highway under said grant; that said ejectment suit was tried, and, on the trial, the grant was offered in evidence by the railroad company and received by the court; that a verdict was rendered in said cause against the said rail-road company, and upon a rule to show cause why a new trial should not be granted, certified to the supreme court for its advisory opinion, it was, in the supreme court, adjudicated and determined that the validity of the said grant could not be called in question in the said ejectment, and that, upon the advice of the supreme court, the circuit court has set aside the verdict and ordered a new trial, and that said railroad company intended, upon the retrial, to offer said grant in evidence as a defence to the said action, and to claim title to the said part of said highway by reason thereof.

Upon these charges the relief prayed for was as follows: For

a decree that the said grant, so far as it purported to convey said part of the said common highway, was illegal and inoperative; that the said defendant company has no estate or title in any part of the said common highway, or right to possession thereof under the said grant; that said grant might be reformed by striking out so much thereof as purports to convey to said railroad company said part of said common highway, and that the said company may be restrained and prohibited from offering or giving in evidence in the trial of the ejectment suit said grant, or from making defence to the said suit by means thereof, and that such other and further relief as the nature of the case might require should be granted.

To this information and bill all the defendants demurred, and show the following grounds for demurrer: (1) that the information and bill did not make such a case as entitles the complainants to discovery from the defendants, or to any relief against them for any of the matters contained in the bill; (2) that the information and bill are exhibited against the defendants for distinct matters and causes, in respect to which the city of Elizabeth has no interest such as entitles it to relief against any of the defendants, or the aid of the state in obtaining any relief, or can be benefited by any decree against the defendants, and so there is a misjoinder of parties complainants; and (3) that, by the said bill and information, there is not shown any sufficient matter of equity to entitle complainants to the relief sought against defendants.

The first and third causes for demurrer may, I think, be considered together.

The tract of land in question does not lie upon the waters of the Hudson river, New York bay or Kill von Kull between Enyard's dock and the New York state line, and therefore is not within that part of the shore of the state in respect to which riparian grants were authorized to be made under the provisions of the Riparian act of March 31st, 1869. *Gen. Stat. p. 2786.*

The power to grant exercised by the riparian commissioners in making the grant to the Central Railroad Company of New Jersey, which is attacked by the information and bill, must, therefore, have been that conferred by the act of March 21st,

1871 (*Gen. Stat. p. 2790*), and subsequent acts. The provisions of those acts seem to have been expressly declared by the court of errors not to confer power to make grants of land under tide-water to other persons than those who are riparian owners *Fitzgerald* v. *Faunce, 17 Vr. 536; Polhemus* v. *Bateman, 31 Vr. 163.* When, therefore, the information and bill declare and assert that the grant in question was made to the Central railroad of lands under tide-water, in front of lands in which the said company had no ownership or title whatever, they display a grant *ultra vires* under the authority of the cases above cited.

The supreme court has determined that, by virtue of other acts in *pari materia* with that of March 21st, 1871, *ubi supra,* power has been conferred upon the riparian commissioners to make grants of lands under tide-water along the shore of the state not included between the New York state line and Enyard's dock to persons other than riparian owners, but that the power thus conferred is to be exercised on the conditions prescribed for the protection of riparian owners by the act of March 31st, 1869, *ubi supra. Elizabeth* v. *Central Railroad Co., 24 Vr. 491.* Whether this construction of the acts in question is correct and reconcilable with the decisions of the court of errors, above cited, need not be considered. For, if correct, the power conferred could not be exercised in a grant to a person not the riparian owner until after a prescribed notice to such owner and his failure, for a fixed period, to apply for and accept a grant to himself. The grant attacked by the information and bill was not made upon such notice and failure, but upon the written consent of corporations, averred in the application to have been owners of the *ripa* in front of which the lands, a grant of which was applied for, lay. When, therefore, the information and bill assert that none of the corporations which joined in such written consent were, in fact, owners of the *ripa* in front of which the particular portion of the lands covered by the grant in question lay, they display, again, and upon this construction of the Riparian acts, a grant *ultra vires.*

It was, however, strenuously urged upon the argument before me that the information and bill did not, in fact, deny that the Central Railroad Company or the ferry company were owners

of land within the common highway claimed to have so long existed, and in front of which land below the tide-water was granted. The argument is that the averment that the ferry company is the owner of lands on each side of the highway raises a conclusive inference that they own the land within the highway between the said tracts. It is no doubt true that the owner of land acquiring title by a conveyance which recognizes the existence of a public highway on which the land abuts, is inferred to have acquired, by his grant, a title extending to the middle of the highway, whenever his grant of abutting land does not expressly exclude the land within the highway. *Jonas* v. *Salter, 10 Vr. 468.* Whenever the grant expressly excludes the land within the highway, it necessarily follows that there may be an ownership of that land in a person who is not the owner of the land abutting on the highway. *H. B. Anthony Shoe Co.* v. *West Jersey Railroad Co., 12 Dick. Ch. Rep. 607.* In the case before us the allegation that the owner of the abutting land is not the owner of any part of the highway, is not inconsistent with the statement of ownership of abutting land, and is sufficient to raise a question whether the grants were within the power of the riparian commissioners, or were *ultra vires.* Nor do I deem it necessary that the information and bill should have disclosed the real owner and made him a party when the purpose of the bill is to aid an ejectment brought to assert the possessory right of a municipality for public use, as against a corporation in possession adversely.

In addition to the allegations of the information and bill, which, if sustained, by proof, would support the conclusion that the grant attacked was beyond the power of the riparian commissioners to make, there are allegations that the application upon which the grant was made deceitfully represented the ownership of the *ripa,* and that such false and deceitful representations induced the grant.

Upon these conjoined allegations, the truth of which is admitted by this demurrer, my conclusion is that an equitable ground for the relief prayed for against the grant is disclosed.

The other question presented by this demurrer relates to the joinder of the city of Elizabeth, as a complainant, with the

attorney-general appearing for the state on the relation of the city.

There is no contention that a relator, upon whose relation the attorney-general files an information, may not join with the information, his own bill for relief appropriate to himself. In such case the pleading is termed an information and bill. *1 Dan. Ch. Pr. 12.* An instance of this mode of pleading is afforded in *Newark Plank Road Co.* v. *Elmer, 1 Stock. 755,* in which hotly contested case there was no contention that the relators could not join their own bill and prayer for relief appropriate to them with the information filed by the attorney-general on their relation.

But the objection specified in the demurrer is that the relief prayed for by the information and bill will be ineffectual and afford no aid to the city. If this objection is valid, the bill is demurrable. *Attorney-General* v. *Greenville and Hudson Railway Co., 15 Dick. Ch. Rep. 153.*

It is obvious that so long as the Central Railroad Company holds the grant in question it may interpose it as a conclusive obstruction to any action of the city in asserting the public character of the *locus in quo* as a common highway. Such was the determination of the supreme court of the United States in *Hoboken* v. *Pennsylvania Railroad Co., 124 U. S. 656.* Since the decision of that case it must be considered as the settled law, to be recognized and applied in this state, that a riparian owner may not impose an easement for the public over lands below high-water mark, as against the state or its grantees, and that an easement of public way over lands reclaimed by filling in below high-water mark to navigable waters is subordinate to the right of the state to grant such lands discharged of the easement. The grant in this case may be effectually interposed in opposition to the claim of the city to possession of the land as a public highway.

Upon the face of the grant in question there is no indication of false representation or deceitful suggestion, such as would permit it to be challenged in the action of ejectment in which it was offered in evidence, or any other similar judicial proceeding. *Elizabeth* v. *Central Railroad Co., ubi supra.* Nor was there

anything in it such as was contained in the grant dealt with in *Polhemus* v. *Bateman, ubi supra,* and which was there held to justify the admission of evidence in opposition to the grant in a collateral proceeding. It follows that an attack upon the grant before us can only be made directly and in a proceeding such as that under consideration.

If the allegations of the information and bill are made out by proof and the grant is disclosed to have been made upon false statements or deceitful suggestions, and if, upon the true facts, the grant is shown to be *ultra vires,* and if it should herein be adjudged to be void, I think the case made by the information and bill clearly indicates that the city of Elizabeth will obtain a relief which will be of value. From the facts stated and admitted the common highway which the city seeks to obtain possession of ran to the navigable waters of Staten Island sound. The highway by land therefore joined the highway by water. The grant discloses that, at the time it was made, some part of the land granted and in front of the common highway had been filled in and reclaimed. With respect at least to so much of the said land as was thus filled in and reclaimed, the allegation that the easement of a common highway was impressed thereon discloses a right which a municipal corporation may assert. Even in respect to the lands under water not then filled in and reclaimed, the allegation of the existence of a common highway running to navigable waters would probably support a claim of right on the part of the municipality, for the doctrines laid down by the court of errors, in *Hoboken Land and Improvement Co.* v. *Hoboken, 7 Vr. 540,* must be accepted by our courts so far as they have not been overruled by *Hoboken* v. *Pennsylvania Railroad Co., supra.* If the grant attacked in this case remains undisturbed, it discharges the public easement of a common highway under the case last named. If the grant is declared void and revoked, the doctrine of the court of errors will apply. The municipality may then assert the public right and obtain possession of the lands for public use.

It results that I can discover no improper joinder of the parties complainant, for if the purpose of the bill is made

effective by a decree, the city of Elizabeth obtains a right to assert the public easement in the lands in question.

In the argument before me it is contended that the pleading demurred to is defective in that it discloses such laches on the part of the state and the city as disentitles them to any of the relief claimed.

Although the grant attacked is shown to have been made in 1874, the discovery of its extent as affecting the highway in question may fairly be considered only to have been made in the litigation set forth, which began in 1888. The information and bill were filed in 1891. In this view the laches is not obvious on a perusal of the pleading. In such cases a demurrer which does not explicitly state that it is grounded upon the laches is not sufficient under rule 209. *Essex Paper Co.* v. *Greacen, 18 Stew. Eq. 504; Van Houten* v. *Van Winkle, 1 Dick. Ch. Rep. 380; Gulch* v. *Fosdick, 3 Dick. Ch. Rep. 353.*

It is further contended that the information and bill are defective because no offer to refund to the grantee what it may have paid for the grant is made therein. That the relief prayed for can only be decreed upon equitable terms, and that such equitable terms will be at least the repayment of a proportionate part of any consideration paid for the grant, is doubtless correct. But the claim relates to a small part of the lands granted, and what proportionate part of the consideration should require to be returned is not determinable until the facts are disclosed. If the failure to offer to return such sum as might be determined to be required is objectionable, I do not think it can be urged under a general demurrer without a specification of the particular objection under the provisions of rule 209.

The demurrer must therefore be overruled.