LOUISA D. COOK, PROSECUTRIX, v. THE MAYOR AND COUNCIL OF THE CITY OF BAYONNE, AND ROBERT GARDNER, COLLECTOR OF REVENUE OF THE CITY OF BAYONNE.

Submitted July 8, 1910—Decided November 7, 1910.

An instrument calling itself a "lease" made by the riparian commission of this state for lands under water, pursuant to the statutes of 1869 and 1871 (*Gen. Stat., pp.* 2788, 2790), which "bargains, sells, leases and conveys" to the grantee "her heirs and assigns forever" with *habendum* in fee and reservation of annual rental with right of re-entry and of distress in case of non-payment expressly reserved, and covenanting for a further conveyance free and discharged of the rent on payment of a stipulated gross sum, is a grant in fee subject to a rent charge, and the land therein described is taxable in the hands of the grantee.

On *certiorari.*

Before Justices PARKER and BERGEN.

For the prosecutrix, *James Benny.*

For the defendant, *Daniel J. Murray.*

The opinion of the court was delivered by

PARKER, J. The prosecutrix claims to have been illegally assessed for local taxes upon certain lands under water in Newark bay for the years 1901 to 1906, inclusive.

The writ of *certiorari* in this case was allowed on May 13th, 1910, presumably when applied for or within a few days thereafter; and the case might well be disposed of on the ground of laches, the latest taxes brought up dating back over three years, and the earliest over eight years. *Pompton Steel Co.* v. *Wayne Township,* 36 *Vroom* 487. But we consider also that prosecutrix should not succeed on the merits, for reasons sufficiently important to be made a matter of record.

Her title to the submerged lands rests on two instruments executed by the riparian commission of New Jersey pursuant to the Riparian act supplement of 1869 and the later enactments, especially that of 1871. *Gen. Stat., pp.* 2788, 2790. The first of these instruments, called a "lease," was made on August 1st, 1889; the second, called a "grant," on May 18th, 1907. It will be observed that the taxes challenged were imposed during the period of possession by prosecutrix under the so-called "lease." Her claim now is that under the instrument of 1889 she took merely a leasehold interest, the state retaining the fee as landlord, and that such fee was therefore not subject to taxation. But an examination of the instrument itself, and of the statute by virtue of which it was executed, will show that the paper is not a lease, but a grant. Section 8 of the act of 1869 provides:

"That if any person or persons, corporation or corporations, or associations, shall desire to obtain a grant for lands under water which have not been improved, and are not authorized to be improved, under any grant or license protected by the provisions of this act, it shall be lawful for any two of the said commissioners concurring, together with the governor and attorney-general of the state, upon application to them, to designate what lands under water for which a grant is desired lie 'within the exterior lines, and to fix such price, reasonable compensation, or annual rentals for so much of said lands as lie below high-water mark, as are to be included in the grant or lease for which such application shall be made, and to certify the boundaries, and the price, compensation or annual rentals to be paid for the same, under their hands, which shall be filed in the office of the secretary of state; and upon the payment of such price or compensation or annual rentals, or securing the same to be paid to the treasurer of this state, by such applicant, it shall be lawful for such applicant to apply to the commissioners for a conveyance, assuring to the grantee, his or her heirs and assigns, if to an individual, or to its successors and assigns, if to a corporation: * * * and the said commissioners shall, in the name of the state, and under the great seal of the state, grant

the said lands in manner last aforesaid, and said conveyance shall be subscribed by the governor and attested by the attorney-general and secretary of state, and shall be prepared under the direction of the attorney-general, to whom the grantee shall pay the expense of such preparation, and upon the delivery of the said conveyance, the grantee may reclaim, improve and appropriate to his and her use, the lands contained and described in said certificate, subject, however, to the regulations and provisions of the first and second sections of this act, and such lands shall thereupon vest in said applicant."

The act of 1871, extending the jurisdiction of the commission to all tidewaters of the state, including Newark bay, makes no change in the character of the grant or the mode of its execution, and specifically provides that the "lease, conveyance or grant shall vest all the rights of the state in the lessee or grantee." *Gen. Stat., p. 2790, pl. 21.*

It will be noted that section 8 of the act of 1869 contains the words "grant," "conveyance," "grantee," several times repeated; that the grantee may reclaim, improve and appropriate to his own use the lands so described, and that the lands "shall vest in such applicant." There is no provision for any stated term of years and none covering the question of ownership of the filling or other improvements at the expiration of any such term. There may be some question as to whether the word "conveyance" includes a lease for years (7 *Encycl. L. (2d ed.)* 487), but in this state, for purposes of recording at least, it does not, unless through some recent change in the recording acts. *Hutchinson* v. *Bramhall, 15 Stew. Eq.* 372 (at *p.* 384). With the exception of the words "lease" and "rent" the rest of the language of section 8 is appropriate only to a conveyance in fee, and this is especially indicated by the words "heirs and assigns" describing the character of the conveyance to be delivered.

Turning to the paper of 1889 we find the phrases "lease," "lands leased," "annual rental," several times recurring. But on the other hand there is no term; the operative words are "bargain, sell, lease and convey unto the said Louisa D. Cook

and to her heirs and assigns forever" with the right to exclude tidewater by filling in and to appropriate them to her exclusive use. The *habendum* is to Mrs. Cook, her heirs and assigns forever; the reservation of rent provides that it shall be payable forever; and the right of distress for non-payment of rent is expressly reserved; this indicating clearly a conveyance in fee with a rent charge; the distress in such case not being of common right, but by virtue of the reservation. 2 *Blk.* 42. There is also a covenant to convey free of the rent charge on payment of a gross sum.

The paper in question seems to be substantially similar to those passed upon by the Court of Errors and Appeals in *Hudson Tunnel Co.* v. *Attorney-General,* 12 *C. E. Gr.* 573, 578, in which it was held that the interest of the state remaining after their execution was a mere charge to secure the payment of the rent reserved, by distress and re-entry or taking possession. In that case the tunnel company was attempting to condemn lands under water "leased" to other corporations and the state intervened, claiming that it was seized of the fee and that the lands were consequently not subject to condemnation; but the court, as we have just seen, held otherwise. We think that case is in point, and that what the prosecutrix took under the so-called "lease" of 1889 was a fee subject to rent charge and the rights of re-entry and distress as reserved. The so-called "grant" of 1907 is then nothing more than a release of the rent charge in consideration of a gross sum pursuant to the covenant in the paper of 1889; and its language is entirely appropriate for the purpose.

The taxes for 1901 and succeeding years were properly imposed, and are therefore affirmed, with costs.